FILED
2013 Aug-30  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **USF INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:12-cv-02529-AKK** |
| **METCALF REALTY** | ) | |
| **COMPANY, INC.; THOMAS** | ) | |
| **CANTONE, individually; and** | ) | |
| **INDIAN HARBOR INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This declaratory judgment action arises out of an underlying state court
lawsuit Metcalf Realty Company, Inc. ("Metcalf"), a property management
company, filed against Thomas Cantone ("Cantone"), a condominium owner.  Doc.
1 at 1-3.  When Cantone asserted counterclaims alleging improper leak repairs,
USF Insurance Company ("USF"), one of Metcalf's insurers, defended Metcalf
under a reservation of rights and subsequently filed this action against all the
parties in the underlying lawsuit.  *Id.* at 1-4, 8.  USF also added one of Metcalf's
insurers, Indian Harbor Insurance Company ("Indian Harbor"), as a defendant.  *Id.*

1

at 2, 8.  USF seeks a declaration that it has no duty to defend or indemnify Metcalf against Cantone's counterclaims because there is purportedly no coverage under the terms of its policies or, alternatively, that its coverage, if any, is in excess to the coverage provided by Indian Harbor, *id.* at 9, and has filed two motions for summary judgment on these two grounds.  Docs. 31, 40.  Likewise, Indian Harbor seeks a summary judgment declaring that its policy provides no coverage to Metcalf for Cantone's counterclaims.  Doc. 20.  The motions are fully briefed and ripe for review.  Docs. 20, 23-25, 27, 31, 33, 40, 43, 48-50.  For the reasons stated below, the court **GRANTS** Indian Harbor's and USF's motions and finds that their policies do not provide coverage to Metcalf.[1]  Accordingly, the court **MOOTS** USF's motion regarding which policy is primary, doc. 40, and **DISMISSES with prejudice** this action as to all parties.

## I.   SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[1] In its reply brief, USF asks the court to strike certain factual allegations asserted by Metcalf in its response brief.  Doc. 50 at 1-2.  The court **DENIES** the motion since there is no evidence of malicious intent or risk of prejudice to USF.

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of

3

events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251-52).

## II.   FACTUAL BACKGROUND

### A.   The USF Policy

USF provided coverage to Metcalf under a commercial general liability policy, which states, in relevant part, that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Docs. 31-5 at 10; 31-6 at 10.  In exchange, the policy requires that Metcalf "see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim" and that "[i]f a claim is made or 'suit' is brought against any insured, you must: . . . [n]otify us as soon as practicable." Docs. 31-5 at 19-20; 31-6 at 19-20.

4

**B.      The Indian Harbor Policy**

Indian Harbor provided coverage to the Woodside Condominium Association, Inc. ("the Association"), as an additional named insured, through an endorsement to a commercial general liability policy Indian Harbor issued to Nations Asset Management LP - Core Multi Family ("Nations") in Texas.  Doc. 21-1 at 1-2, 4. Indian Harbor issued a separate policy number and delivered the policy to the Association at its Alabama address.  *Id.* at 2.  Metcalf is an "insured" under the policy as the "real estate manager" of Woodside Condominiums.  Docs. 21-1 at 21-22; 31-2 at 6; *see also* docs. 20 at 5; 23 at 8.  The policy states, in relevant part, that Indian Harbor "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  Doc. 21-1 at 14, 18.  However, relevant to this lawsuit, the policy contained a fungi or bacteria exclusion:

> This insurance does not apply to:
>
> **Fungi Or Bacteria**
>
> a.      "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with,

exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.   Any loss, cost or expense[] arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.[2]

Doc. 21-2 at 13.  The policy defined "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."  *Id*.

## C.   The Underlying Incident and Complaint

Cantone is the owner of a Woodside Condominiums unit.  Doc. 31-3 at 4. The state court lawsuit that triggered this action stems from a problem Cantone had with his unit.  *See* doc. 1.  Metcalf received notice of the problem on October 29, 2009, when Cantone reported leaks in his bedroom and living room ceilings.  Doc. 31-2 at 11.  Although a Metcalf maintenance employee attempted to repair the roof, Cantone subsequently stopped paying his Association dues, presumably because of displeasure with the repairs.  *Id.* at 11, 13.  The wet conditions apparently caused

---

[2]The same exclusion for fungi and bacteria also applies to damage caused by "personal and advertising" injury.  *See* doc. 21-2 at 13.

Cantone additional problems because on January 28, 2010, he informed the
president of the Association's Board that he was having breathing problems. *Id.* at
11.  The president relayed the complaint to Metcalf. *Id.*

On February 22, 2010, Cantone attended the Association's Board meeting
and asked for reimbursement of $2,500 he paid a contractor to repair his ceiling.
*Id.* at 11, 13.  The Board responded that it "would settle to avoid a possible legal
fee and lawsuit" if Cantone provided an invoice and paid his dues. *Id.* at 11.  In the
meantime, in March and April of 2010, Metcalf made further repairs to Cantone's
roof. *Id.* at 13, 15-18.  The additional repairs apparently also proved inadequate
because on May 3, 2010, Cantone complained to Metcalf that his roof still leaked.
*Id.* at 12.  In response, a Metcalf property manager informed Cantone that the
Board would reimburse him the $2,500 if Cantone paid his dues and late charges,
and signed a release of obligations of Metcalf, its employees, and the Board. *Id.* at
19.  Cantone rejected the offer and, as a result, received notice on December 20,
2010 that his "unit was foreclosed on December 1, 2010 for non-payment of the
common and special expense assessments." *See* doc. 31-3 at 5.

Thereafter, Metcalf foreclosed on Cantone's unit, which the Association
purchased at the foreclosure sale. *Id.* at 3-5.  When Cantone refused to vacate his
unit, Metcalf filed a lawsuit for ejectment and damages for waste and fair rental

value.  *Id.* at 1-2.  In his June 9, 2011 Answer and Counterclaim, Cantone alleged

(1) that his roof "continuously leaked" and "was not repaired [by Metcalf] in a

timely fashion or workman like manner," (2) that the unsatisfactory repairs

"allow[ed] mold and mildew to grow between the walls," (3) that he

"unsuccessfully tried to fix his condominium . . . but was not refunded [the]

$2,500[] that he [had] spent for [the] repairs," (4) that "he was forced to abandon

part of his condominium" because "[t]he mold and mildew problem continued to

grow[]," (5) that the Association and Metcalf "failed or refused to fix" the problem,

and (6) that he had "to seek medical attention and take prescribed drugs."  Doc. 31-

1 at 1-2.  Based on these allegations, Cantone asserted counterclaims against

Metcalf for breach of contract, negligence, conspiracy, and breach of the "general

warranty of covenant of quiet enjoyment" and constructive eviction.  *Id.* at 2-4.

### III.   ANALYSIS

The issue before this court is whether Indian Harbor and USF are obligated

to defend or indemnify Metcalf for Cantone's counter-claim.  Indian Harbor and

USF have both moved for summary judgment, alleging that Metcalf is not entitled

to coverage under their respective policies.  Docs. 20, 31.  The court addresses their

contentions below beginning with Indian Harbor in section III.A and then USF in

section III.B.  For the reasons outlined below, the court agrees with Indian Harbor

and USF that their respective policies do not obligate them to provide coverage to

Metcalf for the claims Cantone raised in his counterclaim.

**A.    Indian Harbor's Motion for Summary Judgment**

To analyze Indian Harbor's assertion that it has no duty to defend or

indemnify Metcalf against Cantone's counterclaims in the underlying lawsuit, doc.

20 at 3, the court will first review the applicable choice of law and then discuss the

policy itself.

**1.    Choice of Law**

"In determining which law applies [to the interpretation of an insurance

policy], a federal district court sitting in diversity must apply the choice of law

rules of the forum state."  *Clanton v. Inter.Net Global, L.L.C.*, 435 F.3d 1319, 1323

(11th Cir. 2005) (quoting *Trumpet Vine Invs., N.V. v. Union Capital Partners I,

Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996)); *see Klaxon Co. v. Stentor Elec. Mfg.

Co.*, 313 U.S. 487, 496 (1941) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64,

74-77 (1938)).  Absent a contractual provision specifying which law governs,

Alabama follows the principle of *lex loci contractus*, applying the law of the state

where the contract was formed.  *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 292

(Ala. 2007) (quoting *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala.

2004)).  That state's law governs unless it is contrary to Alabama's fundamental

public policy. *Id.*; *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506-07 (Ala. 1991). For an insurance policy, the place of contract is where the policy was "issued and delivered." *Cherokee*, 975 So. 2d at 293 (citing *Cincinnati Ins. Co. v. Girod*, 570 So. 2d 595, 597 (Ala. 1990)); *see also Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d 598, 599 (Ala. 1990) (applying the law of the state where the policy was "issued").

Indian Harbor contends that Texas law applies because it issued the policy to Nations in Texas and because another Texas company brokered the transaction. Doc. 20 at 15. However, the evidence shows that Indian Harbor actually issued a new policy number and delivered the policy directly to the Association in Alabama. Doc. 21-1 at 2. Since Metcalf's potential coverage from Indian Harbor arises through the Association's policy and that policy was issued and delivered to the Association in Alabama, the court finds that Alabama law applies in this instance.[3]

## 2.    The Duty to Defend or Indemnify

Indian Harbor asserts that it has no duty to defend or indemnify Metcalf against Cantone's counterclaims because the conduct alleged in Cantone's

---

[3] The result is the same even if Texas law applies. Under Texas law, the duty to defend is determined by "the petition's allegations and the policy's language" and the court must focus on "the factual allegations rather than the legal theories asserted." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Moreover, like in Alabama, where there is no duty to defend, there is likewise no duty to indemnify under Texas law. *Id.* at 82, 84. In other words, as discussed *infra*, Indian Harbor has no duty to defend or indemnify Metcalf even under Texas law.

counterclaim is excluded from coverage by the policy's language.  Doc. 20 at

18-23.  Liability insurance policies impose two separate duties on the insurer: (1)

the duty to defend and (2) the duty to indemnify.  *Tanner v. State Farm Fire & Cas.*

*Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) (citing *Porterfield v. Audubon Indem. Co.*,

856 So. 2d 789, 791-92 (Ala. 2002)).  While ordinarily the two duties "must be

analyzed separately," *id.* at 1066 (quoting *U.S. Fid. & Guar. Co. v. Armstrong*, 479

So. 2d 1164, 1167 (Ala. 1985)), because the duty to defend is broader, no duty to

indemnify exists where there is no duty to defend, *id.* at 1063.  For this reason, the

court begins by analyzing Indian Harbor's purported duty to defend.

"Whether an insurance company owes its insured a duty to provide a defense

in proceedings instituted against the insured is determined primarily by the

allegations contained in the complaint."  *Hartford Cas. Ins. Co. v. Merchs. &*

*Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (quoting *Acceptance Ins. Co. v.*

*Brown*, 832 So. 2d 1, 14 (Ala. 2001) (citing *Armstrong*, 479 So. 2d at 1168)).  "If

the allegations of the injured party's complaint show an accident or an occurrence

within the coverage of the policy, then the insurer is obligated to defend, regardless

of the ultimate liability of the insured."  *Id.* (quoting *Acceptance*, 832 So. 2d at 14

(citing *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977)));

*Tanner*, 874 So. 2d at 1065.  To determine whether a claim is covered by the

11

policy, a court must initially engage in a three-step inquiry: (1) the insured must show first that the claim is covered under the policy's initial grant of coverage; (2) the insurer may then show that a policy exclusion bars coverage; and (3) the insured may thereafter establish that the excluded claim falls under an exception to the exclusion. *Ala. Gas Corp. v. Travelers Cas. & Sur. Co.*, No. CV-10-J-1840-S, 2013 WL 3766531, at *4 (N.D. Ala. July 16, 2013) (citing *Ala. Hosp. Ass'n Trust v. Mut. Assur. Soc. of Am.*, 538 So. 2d 1209, 1216 (Ala. 1989), and *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967)); *Town &Country Prop., L.L.C. v. Amerisure Ins. Co.*, 111 So. 3d 699, 703 (Ala. 2011).  If the allegations in the complaint do not constitute a covered accident or occurrence, the court may look to admissible evidence to establish a duty to defend.  *Hartford*, 928 So. 2d at 1009-1010; *Tanner*, 874 So. 2d at 1064.  Further, "[i]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Hartford*, 928 So. 2d at 1010 (quoting *Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 668 (Ala. 1995)).  Finally, if the allegations in the complaint or the evidence presented include both covered and uncovered acts, the insurer must defend at least the claims covered by the policy.  *Id.* (citing *Blackburn*, 667 So. 2d

12

at 670 (citing *Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988))).

In this case, the parties do not dispute that Cantone's counterclaims fall under the initial grant of coverage provided by Indian Harbor's policy.  Docs. 20, 23, 27; *see also* docs. 20-2 at 2-4; 21-1 at 14, 18-19, 25, 27-28.  Instead, Indian Harbor is contending that a policy exclusion regarding fungi or bacteria precludes coverage.[4]  Docs. 20 at 17-23; 27 at 10; 21-2 at 13.  Policy exclusions "must be interpreted narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it."  *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805

---

[4]USF challenges Indian Harbor's contention on two fronts.  First, USF contends that Indian Harbor cannot rely on the fungi or bacteria exclusion because Indian Harbor purportedly failed to conduct "a full and complete investigation" of Metcalf's insurance claim.  Doc. 23 at 9-10; *see also* doc. 48 at 4.  The court agrees with Indian Harbor that this assertion has "no bearing" on the issues before the court.  Doc. 27 at 5.  Further, an insurer is not required to investigate the facts surrounding an incident, unless there is uncertainty as to whether the complaint on its face alleges facts that would invoke the duty to defend.  *Hartford*, 928 So. 2d at 1010.  No such uncertainty exists here because Cantone's pleading plainly asserts that Metcalf injured him by failing to adequately repair the roof leak and thereby permitting mold and mildew to proliferate in his condominium unit.  Doc. 20-2 at 2.

Next, USF contends that Indian Harbor is barred from relying on its policy exclusions under Alabama Code § 27-14-19 if it failed to deliver a copy of its policy to the Association.  Doc. 23 at 17; *see also* doc. 40 at 17.  Indeed, § 27-14-19 provides that "every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance."  ALA. CODE § 27-14-19(a).  Moreover, the Alabama Supreme Court has held that "when an insurer has not complied with § 27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion."  *Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.*, 659 So. 2d 51, 58 (Ala. 1995).  USF's argument is unavailing, however, because USF failed to submit any evidence indicating that Indian Harbor failed to properly deliver its policy.  In fact, the evidence shows that Indian Harbor properly delivered the applicable policy to the Association in Alabama.  *See* section III.A.1, *supra*.

(Ala. 2012) (quoting *Porterfield*, 856 So. 2d at 806).  However, where there is no ambiguity in the terms of an insurance policy, the court must enforce the policy language "as written" and "cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties."  *Id.*

In the underlying state case, Cantone's counterclaim alleges injuries from a "mold and mildew problem" created by a roof leak that Metcalf unsatisfactorily repaired.  Doc. 20-2 at 2.  Allegedly, as a result of the mold and mildew, Cantone had to abandon a part of his condominium, seek medical attention, take prescription drugs, and spend $2,500 on repairs.  *Id.*  This alleged conduct falls squarely within the exclusion since Indian Harbor's policy precludes coverage for "bodily injury," "property damage," and "personal and advertising injury" that "would not have taken place, in whole or in part, but for the . . . alleged . . . inhalation of, . . . contact with, exposure to, existence of, or presence of any 'fungi' . . . on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury."  Doc. 21-2 at 13.  The policy also excludes coverage for "[a]ny loss, cost or expense arising out of the . . . cleaning up, removing, . . . neutralizing, remediating or disposing of, or in any way responding to . . . 'fungi' or bacteria, by any insured or by any other person or entity."  *Id.*  Since Cantone

14

alleges that his claims arise out of a mold and mildew problem, both of which the policy includes in its definition of "fungi," doc. 21-2 at 13, Cantone's pleading precludes coverage to Metcalf under the plain language of the policy's fungi or bacteria exclusion.  Accordingly, the court finds that Indian Harbor has no duty to defend or indemnify Metcalf, *see Tanner*, 874 So. 2d at 1063, and **GRANTS** Indian Harbor's motion.[5]

**B.    USF's Motions for Summary Judgment**

In light of the court's ruling that Indian Harbor's policy does not provide coverage to Metcalf, USF's second motion regarding whether its policy is secondary to Indian Harbor's, doc. 40, is **MOOT**.  *See* section III.A.2, *supra*.  As it relates then to USF's primary motion that its policy also does not provide coverage to Metcalf, the court notes that the parties do not dispute that USF delivered and issued the policy to Metcalf in Alabama.  Docs. 31, 49, 50; *see also* docs. 31-5 at 4; 31-6 at 4.  Therefore, Alabama law applies in determining the extent of coverage available, if any.  *See also* section III.A.1, *supra*.

---

[5]The result is the same even if the court looks beyond the four corners of Cantone's counterclaim.  *See Armstrong*, 479 So. 2d at 1167 ("If the complaint suggests that the injury alleged may not be within the coverage of the policy, then other facts outside the complaint may be taken into consideration." (citation omitted)).  The facts here consistently reference the alleged mold and mildew problem caused by the roof leak as the source of Cantone's purported injuries. *See, e.g.*, doc. 1.  Therefore, the alleged conduct falls squarely within the policy's fungi and bacteria exclusion provision.

1.     **The Duty to Defend or Indemnify**

The parties do not dispute that Cantone's counterclaims fall under the initial grant of coverage under USF's policy.  Docs. 31, 49, 50; *see also* docs. 31-1 at 2-4; 31-5 at 10, 15, 22-24; 31-6 at 10, 15, 22-24.  Instead, USF contends that it has no duty to defend because Metcalf violated the policy by failing to provide notice of an "occurrence," "offense," "claim," or "suit" "as soon as practicable."  Doc. 31 at 16-28.  Under Alabama law, "[t]he failure of an insured to comply within a reasonable time with [a] conditions precedent in an insurance policy requiring the insured[] to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011) (quoting *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989)).  The Alabama Supreme Court construes the term "as soon as practicable" in insurance contracts "to mean that 'notice must be given within a reasonable time in view of the facts and circumstances of the case.'" *Id.* (quoting *Haston v. Transamerica Ins. Servs.*, 662 So. 2d 1138, 1141 (Ala. 1995) (quoting *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983))).  "Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay." *Id.* (citing *U.S. Fid. & Guar. Co. v. Baldwin Cnty. Home Builders Ass'n*, 770 So. 2d

16

72, 75 (Ala. 2000)).  Prejudice to the insurer is not a factor.  *Id.*

Without identifying a particular "occurrence"or "offense," USF argues that Metcalf failed to notify it "as soon as practicable" because Metcalf's notice came (1) "twenty-[three] months after Cantone first reported the leaks," (2) "twenty[] months after Cantone reported that the leaks were causing him breathing problems," (3) "nineteen months after Cantone demanded reimbursement for monies paid for repairs," (4) "[eighteen] months after Metcalf started repairing Cantone's condominium and the roof," (5) "seventeen months after Metcalf offered to pay Cantone $2,500[] to settle Cantone's claims in exchange for a release of all claims against Metcalf and its employees," (6) "[four] months after the counterclaim was filed," and (7) "[four] months after counsel for Metcalf filed an answer to Cantone's counterclaim."  Doc. 31 at 20-21.  The record before this court supports USF's contention that Metcalf failed to provide timely notice.

Again, the policy required Metcalf to notify USF "as soon as practicable" of an "occurrence" or "offense" that "may result in a claim."  Docs. 31-5 at 19; 31-6 at 19.  While the parties did not identify a specific "occurrence" or "offense" in their briefs, *see* docs. 31, 49, 50, it is clear on the face of Cantone's pleading that the "occurrence"—which the policy defines as an "accident," docs. 31-5 at 23 and 31-6 at 23—is the roof leak reported by Cantone and that the "offense" is Metcalf's

alleged failure to repair the roof in a "workman like manner," doc. 31-1 at 2.

Metcalf asserts that it "first learned that there was a potential claim against it" only

when Cantone filed his counterclaims in the underlying state action in June 2011,

that prior to that Cantone complained only to the Association, and that its notice to

USF in October 2011 was reasonable.  Doc. 49 at 6.  However, the record before

this court establishes instead that Meltcalf received notice well before the June

2011 counterclaim.  Doc. 31-2 at 11-15, 17-19. Specifically, the evidence shows

that Metcalf first learned of the leaks in Cantone's unit in October 2009 and that

Cantone complained to Metcalf that it had not properly repaired the leaks in March

and May of 2010.  Doc. 31-2 at 11.  Moreover, in response, on May 3, 2010,

Metcalf sent a letter to Cantone, on behalf of the Association, offering to reimburse

the $2,500 Cantone spent for repairs if Cantone agreed, among other things, to sign

a "release of obligations of Metcalf Realty, Metcalf Realty Employees [and] the . . .

Board . . . ."  Doc. 31-2 at 19 (emphasis added).  These facts establish that Metcalf

knew about Cantone's problems as early as October 2009 and certainly had

reasonably anticipated by May 2010, when it sought a release from Cantone, that

Cantone may have intended to hold Metcalf liable for any potential damages

arising out of the roof leak and Metcalf's repairs.  *See Fire Ins. Exch. v. McCoy*,

637 F. Supp. 2d 991, 994 (M.D. Ala. 2009) ("[N]otice is not required until some

claim within the coverage of the policy has been presented or is reasonably to be anticipated, in which event the requirement as to notice is satisfied if notice is given within a reasonable time after the situation assumes an aspect suggestive of a possible claim for damages.") (citations omitted).  Based on these facts, the court finds that Metcalf breached a condition of USF's policy by failing to provide notice "as soon as practicable" of an "occurrence" or "offense."

Alternatively, even if Metcalf is correct that it only received notice when Cantone filed a counterclaim against it in June 2010, the four-month delay between the counterclaim and notice to USF is still unreasonable based on the record before this court.  As the Alabama Supreme Court has held, "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *Travelers*, 86 So. 3d at 343 (quoting *Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 536 (Ala. 2008)); *see also Pharr*, 429 So. 2d at 1019-20 (holding that an eight-month delay without excuse is "unreasonable as a matter of law"); *S. Guar. Ins. Co.*, 334 So. 2d at 883-85 (concluding that a six-month delay is "unreasonable as a matter of law" without a reasonable excuse).  According to Metcalf, it delayed providing notice to USF because its President "was out of the office for several weeks due to knee surgery and only later discovered that his staff had mistakenly failed to send notice

19

to the insurance agent." Doc. 49 at 3; *see also* doc. 31-2 at 14. This excuse is unreasonable because other Metcalf employees could have submitted the claim. Moreover, "several weeks" do not account for the full four months delay in notifying USF. In short, by failing to notify USF "as soon as practicable" of an "occurrence" or "offense," Metcalf breached a condition of USF's policy. Therefore, USF has no duty to defend and likewise no duty to indemnify Metcalf against Cantone's counterclaims in the underlying lawsuit. Accordingly, USF's motion is also **GRANTED**.

## IV.   CONCLUSION

Based on the foregoing, the court finds that USF and Indian Harbor are not obligated to defend or indemnify Metcalf. Accordingly, Indian Harbor's and USF's motions, docs. 20 and 31, are **GRANTED** and that USF's second motion, doc. 40, is **MOOT**. This action is **DISMISSED with prejudice**.

**DONE** this 30th day of August, 2013.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE